Wisconsin Investment Company, Respondent, vs.
Skinner, Appellant.

*February 3—March 3, 1936.*

For the appellant the cause was submitted on the brief of *Brennan, Lucas & McDonough* of Milwaukee.

For the respondent there was a brief by *Bitker, Tierney & Puchner* of Milwaukee, and oral argument by *Irving A. Puchner*.

NELSON, J. The facts are simple and not in dispute. In November, 1924, pursuant to the provisions of ch. 180 of the Wisconsin Statutes, a corporation was organized by three residents of this state. The name of that corporation was Wisconsin Investment Company. Its authorized capital stock was five hundred shares of preferred stock of the par value of $100 per share and six hundred twenty-five shares of common stock, without nominal or par value. The principal purpose for which it was organized was to invest in and to hold, sell, and deal in stocks, shares, bonds, debentures, and other evidences of indebtedness or ownership and securities of any individual, corporation, domestic or foreign, association, municipality, state, or government. After it was organized it commenced to do business. Apparently its stock met with ready sale. Commencing in 1925, its articles of incorporation were amended several times so as to permit the company to issue additional shares of both preferred and common stock. In August, 1928, the articles were so amended as to permit the issue of fifteen thousand shares of preferred stock and fifty thousand shares of common. In August, 1929, its articles were again amended so as to permit the outstanding preferred stock to be split up into shares of the par value of $25 each, and to permit the issue of a total of one hundred thousand shares of preferred stock of the par value of $25 per share and five hundred thousand shares of common stock of the par value of $1 per share. The holders of the preferred stock were entitled to receive yearly dividends of six per cent, payable semiannually, when and as declared from the surplus or net profits of the corporation, such dividends to be cumulative, etc. On June 4, 1929, the defendant subscribed for five shares of preferred stock and five shares of common stock, agreeing to pay therefor $102 per share for the preferred stock and $42 per share for the common stock. He further agreed that he would pay for

the stock subscribed as follows : $150 on the receipt of statement and the balance in monthly payments of $25, together with interest at the rate of seven per cent per annum on unpaid balances. The defendant, at the time he subscribed for stock, was given an option to purchase at any time before September 20, 1929, ten additional shares of the common stock at $15 per share. He exercised that option and purchased the ten shares of stock. The total amount of his indebtedness, which included accrued dividends of $3, was $873. He made some cash payments on his stock subscription account and sold some of his stock, authorizing the application of the proceeds to his account, which together totaled the sum of $700.60, leaving a balance due, which included interest, of $238.31. In August, 1931, the Wisconsin Investment Company consolidated with International Security Management Company, a Delaware corporation. That consolidation was effected by the stockholders of the Wisconsin company exchanging their stock for stock in the Delaware company and by the Wisconsin company's assigning all of its assets, which included the two stock subscription contracts signed by the defendant, to the Delaware company and by dissolving the Wisconsin company. The Delaware corporation then changed its name to Wisconsin Investment Company. The defendant exchanged his stock in the Wisconsin company for stock in the Delaware company.

The defendant contends that the trial court erred in refusing to dismiss the complaint because the subscription contracts signed by the plaintiff were void in their inception for the reason that both the plaintiff and its predecessor corporation were prohibited from transacting business in this state. The defendant asserts that both corporations were "investment companies" within the meaning of sec. 216.01, Stats., and since neither of them ever complied with the provisions

of ch. 215 of the statutes, applicable to foreign building and loan associations, authorized to do business in this state, and made applicable to "investment companies" by sec. 216.01, Stats., they were wholly without authority to transact business in this state.

Sec. 216.01, Stats., provides:

"No person and no copartnership, association or corporation, whether local or foreign, heretofore organized or which may hereafter be organized, doing business as a so-called investment, loan, benefit, co-operative, home, trust or guarantee company, for the licensing, control and management of which there is no law now in force in this state, and which such person, copartnership, association or corporation, shall solicit payments to be made to himself or itself either in a lump sum, or periodically, or on the instalment plan, issuing therefor so-called bonds, shares, coupons, certificates of membership or other evidences of obligation or agreement, or pretended agreement to return to the holder or owners thereof money or anything of value at some future date, shall solicit or transact any business in this state unless such person, co-partnership, association or corporation, shall have first complied with all the provisions prescribed in chapter 215 of the statutes required of foreign building and loan associations authorized to do business in this state."

Ch. 215 (215.38 *et seq.*, Stats.) provides among other things that no foreign building and loan association shall issue its shares, receive moneys, or transact any business in this state unless such association shall have and keep on deposit with the state treasurer in trust for the benefit and security of all of its members in this state, $500,000 to be held in trust as aforesaid until all shares of such association held by residents of this state shall have been fully redeemed and paid off and until its contracts and obligations to persons and members residing in this state shall have been fully performed and discharged.

In our opinion the contention of the defendant is without merit. Neither the plaintiff nor its predecessor is or was

an investment, loan, benefit, co-operative, home, trust, or guarantee company. The Wisconsin corporation was organized under ch. 180, Stats. It was authorized to issue preferred and common stock and to invest and deal in stocks, bonds, etc. It issued its shares of stock but never solicited payments to be made to it either in a lump sum or periodically or on the instalment plan, issuing therefor so-called bonds, shares, coupons, certificates of membership, or other evidences of obligation, or agreement or pretended agreement to return to the holder or owner thereof money or anything of value at some future date. The fact that the Wisconsin company invested its money in stocks, bonds, etc., upon which it hoped to make a profit on the resale thereof did not make it an investment company within the meaning of the provisions of sec. 216.01, Stats. It did not agree to return to the holders or owners of such stock anything of value at some future date. The holders or owners of such stock were only entitled to share in the profits of the corporation. The stockholders were entitled to dividends only when earned and declared. In the event of dissolution the stockholders were entitled to their proportionate shares, subject to a preference given to the preferred stock, in the net assets of the company, whatever they might be worth. The shares of stock issued did not give to the holders thereof any rights or benefits other than those customarily enjoyed by holders of preferred and common stock in ordinary business corporations. It is our conclusion that the legislature did not intend that sec. 216.01, Stats., should apply to an ordinary corporation organized under the provisions of ch. 180, Stats., and authorized to issue preferred and common stock entitling the holders thereof to share directly and in proportion to their holdings in the profits and losses of the business, simply because such corporation engages in the business of buying, selling, and dealing in stocks, bonds, and other securities. The attorney general, in 1926, similarly con-

strued the provisions of sec. 216.01, Stats. (XV Op. Atty. Gen. 250.) In that opinion weight was given to the construction which theretofore had been given to sec. 216.01, Stats., by the banking department of this state.

Since in our opinion neither the Wisconsin company nor the Delaware company was or is an investment company within the meaning of sec. 216.01, Stats., it is unnecessary to determine whether the defendant by his acts ratified the purchase of stock and bound himself to pay therefor regardless of whether the Wisconsin company or the Delaware company was authorized to do business in this state. Compare *Cox v. Hanson,* 200 Wis. 341, 228 N. W. 510.

*By the Court.*—Judgment affirmed.